# CHARLESTON.

STATE *v.* HILL..

Decided April 21, 1900.

1. INDICTMENT—*Burglary—Allegation—Proof.*
   An indictment charging that the accused "did break and enter into a sealed box railroad freight car, the property of the Pittsburg, Cincinnati, Chicago and St. Louis Railroad Company," is not sustained by proof tending to show that the accused broke and entered a freight car belonging to the "Pittsburg, Cleveland, Chicago and St. Louis Railroad Company," or the "C., C. and St. L.," or the "B. and O. R. R. Company," but the proof of the ownership of the property broken and entered must be as charged in the indictment. (pp. 133, 134).

2. INDICTMENT—*Endorsed.*
   The fact that an indictment is not indorsed "A true bill," and signed by the foreman of the grand jury, is not a fatal defect. (p. 133).

3. JURY—*Evidence—Accomplice.*
   The jury may convict on the uncorroborated evidence of an accomplice, and, where such conviction is sustained by the circuit court, it will not be disturbed by this Court. (p. 134).

Error to Circuit Court, Barbour County.

Jake Hill was convicted of breaking into a railroad car, and brings error.

EDGAR P. RUCKER, Atty. Gen., and LUTHER C. ANDERSON, for the State.

DENT, JUDGE:

At the October term, 1899, Jake Hill was convicted of feloniously and burglariously breaking into a box car on the Baltimore and Ohio Raiload, and stealing a hog therefrom of the value of ten dollars, principally on the evidence of Hiram Turner, who was serving a term in the penitentiary for the same offense. He made a motion for a new trial, which was overruled, and he was sentenced to a term of five years in the penitentiary. On writ of error he relies upon three grounds to reverse the judgment of the circuit court. First, That the indict-

ment was not endorsed a true bill and signed by the foreman of the grand jury. This has been the usual practice, and while it is highly proper for the purpose of additional identification, has never been held absolutely essential. In the case of *State* v. *Heaton,* 23 W. Va. 773, this question was left open for future consideration. In some States it is a necessary requirement by statute, but such is not the case in this State. In Virginia it has been held to be unnecessary, as the indictment is fully identified by being presented in open court by the grand jury, signed by the prosecuting attorney, and thus made a part of the records of the court as a true bill. *Price* v. *Commonwealth,* 21 Grat. 859; *White* v. *Commonwealth,* 29. Grat. 824. "At common law the signature of the foreman is usually regarded as formal and not necessary to the validity of the indictment." 10 En. Pleading & Practice, 439. It has further been held that being a mere technical error, it must be taken advantage of before pleading, or it will be deemed waived. *State* v. *Harris* 12 Nev. 418; *State* v. *Hughes,* 4 Iowa 354; *State* v. *Brooks,* 94 Mo. 121; *People* v. *Lawrence,* 21 Cal. 368; *State* v. *Agnew,* 52 Ark. 275. The only end that such endorsement could serve would be for the purpose of identification. The presentation in open court, the endorsement of the names of the witnesses on whose evidence it is found, the signature of the prosecuting attorney, and the record made by the court, is certainly sufficient identification where there is no fraud pretended or charged.

If there was a plea charging the wrongful substitution of a false indictment, a different rule might prevail, but in the absence of any pretense of this character, the presumption of the law is in favor of the validity of the indictment, more especially when the accused has waived all preliminary objections thereto of purely a technical character by pleading the general issue.

The second objection is that there is a variance between the proof and the allegation of the indictment as to the ownership of the car from which the hog was stolen. The indictment alleges that the car was the property of the Pittsburg, Cincinnati, Chicago & St. Louis Railroad Company, in the custody of the Baltimore and Ohio Railroad Company. The evidence shows that the car was marked, P. C. C. & St. L., in the custody of the B. & O. R. R. Co., and one of the witnesses stated that he understood that the letters stood for the Pittsburg, Chicago, Cleveland

& St. Louis. Another witness stated the car was a B. & O. box car. Another witness that it was marked C., C. & St. L. No witness testifies as alleged in the indictment that the car was the property of the Pittsburg, Cincinnati, Chicago & St. Louis Railroad Company. The car being in the special custody of the Baltimore and Ohio Railroad Company, it was not necessary to allege its general ownership, but an allegation of special ownership would have been sufficient, but having alleged the ownership, it must be proven accordingly for the protection of the prisoner, otherwise he could be again indicted for the same offence proven as being a different offence form that alleged. The B. & O. R. R. Co. may have in its care and custody at the same time many cars of various roads. An indictment for the breaking into the house of one person cannot be sustained by proof of breaking into the house of another. And an indictment for breaking into the car of a given railroad company cannot be sustained by proof of breaking into the car of another company. Wharton's Criminal Evidence, section 94. In section 102 it is said: "The name of a corporation must be correctly given and proved as laid." *Johnson v. State,* 73 Ala. 483; 2 American State Reports, 394. If the accused had only been found guilty of petit larceny a different rule might prevail, but he is found guilty of breaking and entering a box car, the property of the Pittsburg, Cincinnati, Chicago and St. Louis Railroad Company, and the proof does not sustain the charge. The hog was only valued at ten dollars. This is a fatal variance or failure of proof, for which the court should have set aside the verdict. The last objection is that the accused was convicted on the uncorroborated evidence of an accomplice, now serving a term in the penitentiary for the same crime. The court was not asked to instruct the jury as to the necessary caution for it to exercise in such a case and the danger of giving credence to such testimony, but the jury was permitted to exercise its own judgment with regard thereto, and the court refused to disturb the verdict. This plainly comes within the case of the *State* v. *Betsall,* 11 W. Va. 703. While the uncorroborated evidence of an accomplice, under the circumstances as shown, has always been viewed with suspicion and doubt, yet where the accused asks no instructions with regard thereto, and leaves the whole matter of law and evidence for the jury to determine, he cannot afterwards complain that such verdict was contrary to the law and

evidence. If he thought the jury was not fully advised as to the law, he should have had the court instruct them, otherwise it will be presumed that it was fully informed, and gave to the accomplice's evidence only such weight as the law authorizes. For the fatal variance in the proof aforesaid, the judgment is reversed, the verdict of the jury set aside, and a new trial awarded to the accused.

*Reversed.*